UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MISTY SHINLEVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-371-CCS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 24 & 25]. Misty Shinlever ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.   PROCEDURAL HISTORY**

On April 3, 2012, the Plaintiff filed an application for supplemental security income ("SSI"), claiming a period of disability which began June 1, 2011. [Tr. 122]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 83]. On May

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

9, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 7-25]. The Appeals Council denied the Plaintiff's request for review of her application [Tr. 1-6]; thus, the ALJ's decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on August 24, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

This case involves an application for SSI. To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff alleges that substantial evidence does not support the ALJ's RFC determination. [Doc. 15 at 7-12]. The Plaintiff asserts that the ALJ's RFC finding, which in relevant part limits the Plaintiff to no interaction with the public but occasional interaction with co-workers and supervisors, is inconsistent with the ALJ's Step 3 finding which gives great weight to the opinion of consultative examiner Martha Wike, Ph.D., who opined "marked" limitations with regard to the Plaintiff's ability in social functioning. [*Id.*]. The Plaintiff maintains that a "marked" limitation in social functioning prevents her from interacting with others, even on an occasional basis as found by the ALJ. [*Id.* at 7-10].

At step three, the ALJ found that the Plaintiff did not satisfy the "paragraph B" criteria of Listing 12.04, Affective Disorders, and Listing 12.06, Anxiety Related Disorders. [Tr. 13]. "The listings" as they are commonly referred, "are descriptions of various physical and mental illnesses

4

and abnormalities . . . defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990).  As described above, a claimant who has an impairment that satisfies the criteria of a listing will be found disabled.  In the context of mental impairments, a claimant must satisfy, among other requirements, the "paragraph B" criteria.  The "paragraph B" criteria, which is the same for Listings 12.04 and 12.06, require "marked" limitations in at least two of the following broad functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.04, 12.06.  Social functioning is the only area at issue in this case.

Returning to the ALJ's Step 3 finding, the ALJ determined that the Plaintiff retained the capacity to interact appropriately and communicate effectively with others. [Tr. 13].  Specifically, the ALJ found that the record demonstrated at least partial integration into community life, that the Plaintiff used natural supports and participated in appropriate interaction with others, and that the Plaintiff could function in an appropriate manner in the public domain.  [*Id.*].  In support of these findings, the ALJ noted that the Plaintiff attended church, grocery shopped, drove to check on her grandmother twice a week, attended partnering and anger management classes, visited her children every other week, and at one time reported that she enjoyed four-wheeling and taking her children to the lake. [Tr. 13-14].  The ALJ then "concurred" [Tr. 14] with the opinion of Dr. Wike who opined that the Plaintiff's "ability to interact with other people is markedly impaired" [Tr. 536].  Accordingly, the ALJ assessed "marked difficulties in maintaining social functioning" at Step 3. [Tr. 14].

In the RFC portion of the ALJ's decision, the ALJ limited the Plaintiff to occasional interaction with co-workers and supervisors and no interaction with the public. [Tr. 15].   It is

5

important to note that an ALJ's Step 3 finding is not an RFC finding. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A. A claimant's RFC is formulated at Steps 4 and 5, which "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraphs B and C." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Therefore, a finding by an ALJ that a claimant has "marked" limitations in social functioning at Step 3, for example, does not mean that the claimant's RFC will have corresponding or identical limitations. *See Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011)("The RFC assessment takes into account all of the relevant evidence in the case record, . . . and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing Soc. Sec. Ru. 96-8p, 1996 WL 374184); *see also Fellows v. Comm'r of Soc. Sec.*, No. 1:14-CV-506, 2015 WL 4134699, at *6 (W.D. Mich. July 8, 2015) (agreeing with the *Pinkard* Court).

In fashioning the Plaintiff's RFC in this case, the ALJ again relied on Dr. Wike's opinion. Specifically, the ALJ stated, "I accept [Dr. Wike's] conclusions insofar as they are consistent with the [RFC] assigned herein and reflective of only marked impairments in social interaction and no more than moderate impairments in all other domains with respect to the claimant's ability to perform work-related activities." [Tr. 18]. In other words, the Plaintiff's "marked" limitation in

6

interacting "with other people," as opined by Dr. Wike, translated into a functional ability to occasionally interact with co-workers and supervisors but never interact with the public, according to the ALJ.

The Plaintiff does not contest the ALJ's Step 3 finding or the ALJ's adoption of Dr. Wike's opinion at Step 3. [Doc. 23 at 4]. Rather, the Plaintiff argues that her RFC should be consistent with the ALJ's "paragraph B" findings, and that an RFC that allows occasional interaction with co-workers and supervisors is contrary to the ALJ's mental assessment within Step 3. *Id.* But Step 3 regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* The RFC is a subsequent determination that is distinct and separate from Step 3. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step."). Although the Plaintiff cites numerous regulations, agency rulings, and non-binding caselaw, all of which the Court has thoroughly reviewed, the Court finds none of the Plaintiff's cited authority requires an ALJ's RFC determination to mimic the specific "paragraph B" findings assessed at Step 3.

And while the Sixth Circuit Court of Appeals has not yet had an opportunity to weigh in on the matter, this Court, as well as numerous other districts within our circuit, have agreed with the line of reasoning expressed in *Pinkard*, *Bailey*, and *Fellow*. *See Ceol v. Berryhill*, No. 3:15-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) ("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have

7

corresponding limitations with regard to her RFC."); *Broyhill v. Colvin*, No. 3:14-CV-417-CCS, 2016 WL 614691, at *9 (E.D. Tenn. Feb. 16, 2016) (holding same); *Allen v. Colvin*, No. 3:15-00947, 2016 WL 7664310, at *4 (M.D. Tenn. Nov. 17, 2016) (concluding that circuit case law and Social Security Ruling 96-8p supported the ALJ's decision to not "incorporat[e] his concentration, persistence, and pace conclusions at step three into his RFC assessment."), *adopted by*, No. 3:15-CV-00947, 2017 WL 67986 (M.D. Tenn. Jan. 6, 2017); *Koster v. Colvin*, No. 1:13CV2719, 2015 WL 413795, at *5 (N.D. Ohio Jan. 30, 2015) (rejecting the plaintiff's argument that his RFC should have reflected "paragraph B" limitations and recognizing that "[t]he Social Security Administration has long distinguished between findings of limitations under the Paragraph B criteria and those included in an RFC assessment") *aff'd sub nom. Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466 (6th Cir. 2016); *see also Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."); *Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (rejecting the plaintiff's "claims the ALJ erred because he did not adequately include his own step–3 finding that Israel has 'moderate difficulties' in 'concentration, persistence, or pace' in his residual functional capacity (RFC) finding.").

The Court's inquiry, then, turns to whether substantial evidence supports the ALJ's RFC determination that the Plaintiff can occasionally interact with co-workers and supervisors, but must have no interaction with the public. Because the ALJ adopted Dr. Wike's "marked" limitation in the RFC portion of the decision as well, the Plaintiff asserts that interacting with others on even an occasional basis is inconsistent with a "marked" limitation in social functioning. [Doc. 15 at 8]. The Plaintiff further contends that the ALJ offers no explanation why the Plaintiff can interact

8

with co-workers and supervisors but not the public when Dr. Wike limited interaction "with other people." [Docs. 15 at 10, 23 at 7].

"Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.C.2. It contemplates a claimant's ability to get along with others, cooperative behaviors, consideration for others, awareness of others' feelings, social maturity, and in a work setting, an ability to interact with the public, respond appropriately to supervisors, and cooperate with co-workers. *Id.* "Marked" is defined as "more than moderate but less than extreme." § Pt. 404, Subpt. P, App. 1, 12.00.C. It represents a degree of limitation that "interfere[s] seriously with your ability to function independently, appropriately, effectively, and on a sustain basis." *Id.* Notably, a "marked" limitation in social functioning is not defined "by a specific number of different behaviors in which social functioning is impaired, but by the nature and overall degree of interference with function." § Pt. 404, Subpt. P, App. 1, 12.00.C.2.

The Plaintiff's position essentially asks the Court to find that a "marked" limitation in social functioning can never be synonymous, under any circumstances, with an ability to occasionally interact with others. The Plaintiff relies on Social Security Rulings 85-15 and 96-9p[2] as well as the agency's Program Operation Manual System ("POMS") to argue that a "marked

---

[2] Both rulings state that a "substantial loss of ability" to respond appropriately to supervision, co-workers, and usual work situations would severely limit the potential occupational base. Soc. Sec. Ru. 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985); Soc. Sec. Rul. 96-9-p, 1996 WL 374185, at *9 (July 2, 1996). Social Security Ruling 85-15, however, applies to claimants who suffer from nonexertional impairments only while Social Security Ruling 96-9p applies to claimants who are limited to less than a full range of sedentary work. In this case, the ALJ found that the Plaintiff has exertional and nonexertional impairments that allow her to perform a full range of work at all exertional levels with the specific functional limitations assessed in her RFC. [Tr. 15].

limitation" creates a "substantial loss of ability" and because an ability to respond appropriately to supervision, co-workers and usual work situations is a basic mental demand of competitive, remunerative, unskilled work, a "substantial loss" in social functioning will likely cause a finding of "disabled." [Docs. 15 at 8-9, 23 at 4-5]. This argument, however, ignores that a "'[s]ubstantial loss' cannot be precisely defined" because "[i]t does not necessarily relate to any particular adjective, number, or percentage," POMS § DI. 25020.010.A.3. Mental Limitations, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425510001 (last visited May 11, 2017), just as a "marked" limitation cannot be defined by a specific behavior, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.C.2. Because the RFC is the most a claimant can do and must be based on *all* of the relevant medical and nonmedical evidence in the record, § 416.945(a)(1), -(3), the Court disagrees with the Plaintiff's contention that an ability to occasionally interact with others will always reflect a limitation in social functioning that is less than marked. *See Miller v. Colvin*, No. 3:15-CV-294-DW, 2016 WL 154127, at *8-9 (W.D. Ky. Jan. 12, 2016) (finding an RFC that limited the plaintiff to "no interaction with the general public and only occasional, but superficial, interaction with co-workers and supervisors combined with no close tandem work" properly accounted for the plaintiff's "marked" limitation in social functioning); *Libertore v. Comm'r of Soc. Sec.*, No. 5:11 CV 1245, 2012 WL 3815622, at *11 (N.D. Ohio July 26, 2012) ("To the contrary, a restriction to jobs without arbitration, confrontation, or negotiation, and further involving only superficial interpersonal interaction with the public or co-workers, is a significant enough limitation to sufficiently accommodate for Claimant's marked social functioning difficulties."), *adopted sub nom.*, *Libertore v. Astrue*, No. 5:11 CV 1245, 2012 WL 3815626 (N.D. Ohio Sept. 4, 2012). [3]

---

[3] The Plaintiff cites a string of cases in which claimants with "mild" to "moderate" limitations in social functioning have been limited to occasional or no interaction with others.

Neither is the Court persuaded by the Plaintiff's reliance on *Weinberg v. Colvin*, No. 2:12-CV-01017, 2013 WL 3972651, at *6 (W.D. Pa. July 31, 2013) in which case the district court remanded the ALJ's decision, finding an RFC that limited the plaintiff to jobs that did not involve high levels of stress, or close supervision or interaction with co-workers or the public, was contrary to the "marked" limitations in social functioning opined by a treating physician and a consultative examiner. The ALJ's underlying error, however, was his failure to adopt the opinions of the treating and consultative physicians in the first place. *Id.* at *4. Instead, the ALJ deferred to the less restrictive opinion of a non-examining state agency physician who opined "no significant limitations" in the area of social functioning. *Id.* Thus, limiting the plaintiff to jobs that did not involve high levels of stress, or close supervision or interaction with co-workers or the public, was a limitation that accommodated "no significant limitations" in social functioning. By contrast, here, the Plaintiff's RFC was fashioned to accommodate a "marked" limitation in social functioning. Substantial evidence supports a finding that interacting with co-workers and supervisors on an occasional basis—that is, very little up to one-third of the workday, Soc. Sec. Rul. 83-10, 1983 WL 31251, at*5 (Jan. 1, 1983)—and no interaction with the public accommodates the Plaintiff's "marked" limitation.

In reaching this conclusion, the Court observes that the Plaintiff testified she has a difficult time being around "a lot of people," she isolates herself, and is fearful when engaging in conversations with others, but she also lives with a roommate, drives to check on her grandmother twice a week, grocery shops with a friend, and attends church two to three times a week. [Tr. 16,

---

[Doc. 15 at 9-10]. These cases, as well as those cited herein by Court, evince that a particular degree of limitation in social functioning cannot be defined by a specific behavior or accommodated by specific RFC.

41, 44, 51-53]. The Plaintiff's testimony is consistent with Dr. Wike's observations that the Plaintiff gets along poorly with others and spends time alone but nonetheless interacts with others on at least an occasional basis because she grocery shops, attends parenting and anger management classes, Bible study, church, and visits her children. [Tr. 18, 535-36]. This evidence, which is addressed in the ALJ's decision, demonstrates that the Plaintiff should avoid interacting with the public or large groups, but can tolerate infrequent interactions with individuals or a smaller number of people. Therefore, while Dr. Wike did not qualify "other people" in her opinion, substantial evidence supports the specific functional limitations the ALJ assigned to accommodate the Plaintiff's "marked" limitation in social functioning.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgement on the Pleadings [**Doc. 14**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] is **GRANTED**. The decision of the Commissioner is **AFFIRMED**.

IT IS SO ORDERED.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge